**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          slitteral@buror.com

**MIGLIACCIO & RATHOD LLP**
Nicholas A. Migliaccio (*pro hac vice*)
Jason S. Rathod (*pro hac vice*)
412 H Street, NE
Washington, D.C. 20002
Telephone: (202) 470-3520
Facsimile: (202) 800-2730
Email: nmigliaccio@classlawdc.com
          jrathod@classlawdc.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL FRIEND, DAPHNE PAREAS, SCOTT SEVELAND, PATRICE SHERMAN, NESTOR ALMEIDA, ADELINA LAVECCHIA, DAN HENDERSON, MARITZA ANGELES, TIM INSELMANN, WILLIAM WEST-DAVIS, PATRICIA MEDBERRY, and HANDY COLINDREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 3:21-cv-07109-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:   March 17, 2022<br>Time:  10:00 a.m.<br>Dept.:  Courtroom 4 – 17th Floor<br>Judge:  Honorable Vince Chhabria |

**TABLE OF CONTENTS**

PAGE(S)

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT .........................................................................................................2

A.   Plaintiffs Have Stated Actionable Fraud-Based Claims................................2

1.   Plaintiffs' Concealment/Omission-Based Claims are
Adequately Plead (Counts 1-2, 4-15, 17-19)......................................2

a.   The Defect .................................................................................3

b.   Apple Had Knowledge Of The Defect .......................................5

c.   Apple Had A Duty To Disclose The Defect................................9

2.   Plaintiffs' Affirmative Misrepresentation-Based Claims are
Adequately Plead (Counts 2, 4-7, 9-15, 18, 20) ...............................13

B.   Plaintiffs Have Stated Actionable State Deceptive Trade Act Claims...................15

C.   Plaintiffs Have Stated Claims For Unjust Enrichment..............................................16

D.   This Court Has Jurisdiction To Grant Plaintiffs' Equitable Relief ..........................17

1.   Plaintiffs' Adequately Allege Equitable Restitution ...................................17

2.   Plaintiffs Adequately Allege Injunctive Relief ...........................................18

III. CONCLUSION ....................................................................................................20

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020)...................................................................... 2, 9, 12

*Barrett v. Apple Inc.*,
  523 F. Supp. 3d 1132 (N.D. Cal. 2021) ............................................................................ 2

*Berenblat v. Apple, Inc.*,
  2009 WL 2591366 (N.D. Cal. Aug. 21, 2009) .............................................................. 15

*Blessing v. Plex Sys., Inc.*,
  2021 WL 6064006 (N.D. Cal. Dec. 22, 2021) .............................................................. 16

*Brooks v. Thomson Reuter Corp.*,
  2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .............................................................. 16

*Bryde v. Gen. Motors, LLC*,
  2016 WL 6804584 (N.D. Cal. Nov. 17, 2016) ................................................................ 7

*Burdt v. Whirlpool Corp.*,
  2015 WL 4647929 (N.D. Cal. Aug. 5, 2015) .................................................................. 5

*Cepelak v. HP Inc.*,
  2021 WL 5298022 (N.D. Cal. Nov. 15, 2021) ..................................................... 5, 17, 19, 20

*Clark v. Am. Honda Motor Co.*,
  528 F. Supp. 3d 1108 (C.D. Cal. 2021) .......................................................................... 3

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015) ...................................................................................... 10

*Davidson v. Apple, Inc.*,
  2017 WL 976048 (N.D. Cal. 2017) ............................................................................... 13

*Davidson v. Apple, Inc.*,
  2017 WL 3149305 (N.D. Cal. July 25, 2017) ................................................................. 7

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ................................................................................... 18, 19

*Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*,
  2015 WL 5138080 (N.D. Cal. Sept. 1, 2015) ................................................................. 7

*Doe v. SuccessfulMatch.com*,
  70 F. Supp. 3d 1066 (N.D. Cal. 2014) ........................................................................ 15

*Dougherty v. Drew Univ.*,
   534 F. Supp. 3d 363 (D.N.J. 2021) ................................................................. 16

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,
   2015 WL 4941780 (N.D. Cal. Aug. 19, 2015) .................................................. 9

*Dytch v. Yoon*,
   2011 WL 839421 (N.D. Cal. Mar. 7, 2011) .................................................... 13

*Elgindy v. AGA Serv. Co.*,
   2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) ............................................. 18, 19

*Freeman v. Indochino Apparel, Inc.*,
   443 F.Supp.3d 1107 (N.D. Cal. Mar. 11, 2020) .............................................. 18

*Guan v. Mercedes-Benz USA, LLC*,
   2021 WL 5042994 (N.D. Cal. May 24, 2021) ................................................... 6

*Gurwell v. Sea World Parks & Ent. LLC*,
   2021 WL 4168503 (E.D. Va. Aug. 11, 2021) .................................................. 16

*Haas v. Travelex Ins. Servs. Inc.*,
   2021 WL 3682309 (C.D. Cal. Aug. 19, 2021) ................................................. 18

*Hamm v. Mercedes-Benz USA, LLC*,
   2021 WL 1238304 (N.D. Cal. Apr. 2, 2021) ..................................................... 3

*Hardt v. Chrysler Grp., LLC*,
   2015 WL 12683965 (C.D. Cal. June 15, 2015) ................................................. 3

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ......................................................................... 10

*In re Bang Energy Drink Mktg. Litig.*,
   2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) ................................................... 16

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) .............................................................. 2

*In re Juul Labs, Inc., Antitrust Litig.*,
   2021 WL 3675208 (N.D. Cal. Aug. 19, 2021) ................................................... 5

*In re MacBook Keyboard Litig.*,
   2019 WL 1765817 (N.D. Cal. Apr. 22, 2019) ..................................... 5, 10, 11, 12

*In re MacBook Keyboard Litig.*,
   2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ................................................. 18

*In re NJOY, Inc. Consumer Class Action Litig.*,
   2015 WL 12732461 (C.D. Cal. May 27, 2015) ............................................... 15

*In re Takata Airbarg Prod. Liab. Litig.*,
    462 F. Supp. 3d 1304 (S.D. Fla. 2020).................................................................. 16

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
    534 F. Supp. 3d 1067 (N.D. Cal. 2021).................................................................. 9

*Junhan Jeong v. Nexo Financial LL, et al.*,
    2022 WL 174236 (N.D. Cal. Jan. 19, 2022)......................................................... 17

*Kowalsky v. Hewlett-Packard Co.*,
    2011 WL 3501715 (N.D. Cal. Aug. 10, 2011).................................................... 6, 9

*Krause-Pettai v. Unilever United States, Inc.*,
    2021 WL 1597931 (S.D. Cal. Apr. 23, 2021)...................................................... 17

*Lima v. Gateway, Inc.*,
    710 F. Supp. 2d 1000 (C.D. Cal. 2010).......................................................... 14, 15

*Lusson v. Apple Inc.*,
    2016 WL 10932723 (N.D. Cal. June 20, 2016)................................................ 12, 13

*MacDonald v. Ford Motor Co.*,
    37 F. Supp. 3d 1087 (N.D. Cal. 2014)........................................................... 6, 8, 9

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989)............................................................................. 6, 7

*Mui Ho v. Toyota Motor Corp.*,
    931 F. Supp. 2d 987 (N.D. Cal. 2013).................................................................. 7

*Myers v. BMW of N. Am., LLC*,
    2016 WL 5897740 (N.D. Cal. Oct. 11, 2016)........................................................ 8

*Nava v. Kobe Steel, Ltd.*,
    2019 WL 5173767 (N.D. Cal. Oct. 8, 2019)........................................................ 16

*Partida v. Tristar Prod., Inc.*,
    2021 WL 4352374 (C.D. Cal. Aug. 5, 2021)........................................................ 8

*Patterson v. RW Direct, Inc.*,
    382 F. Supp. 3d 938 (N.D. Cal. 2019)............................................................... 7, 8

*Sagastume v. Psychemedics Corp.*,
    2020 WL 8175597 (C.D. Cal. Nov. 30, 2020)..................................................... 17

*Schley v. One Planet Ops Inc.*,
    445 F. Supp. 3d 454 (N.D. Cal. 2020)................................................................. 5

*Schneider v. Chipotle Mexican Grill, Inc.*,
    328 F.R.D. 520 (N.D. Cal. 2018)....................................................................... 19

*Sciacca v. Apple, Inc.*,
  362 F. Supp. 3d 787 (N.D. Cal. 2019)...................................................................... 4, 15

*Shuman v. SquareTrade Inc.*,
  2021 WL 5113182 (N.D. Cal. Nov. 3, 2021) ............................................................... 19

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020).................................................................................. 17, 18

*Starr v. Baca*,
  652 F. 3d 1202 (9th Cir. 2011).................................................................................... 4

*Taleshpour v. Apple Inc.*,
  2021 WL 1197494 (N.D. Cal. Mar. 30, 2021) ............................................... 5, 8, 11, 12

*Taleshpour v. Apple, Inc.*,
  2021 WL 3037703 (N.D. Cal. Jul. 19, 2021) ........................................................ 10, 11

*Tucker v. Post Consumer Brands, LLC*,
  2020 WL 1929368 (N.D. Cal. Apr. 21, 2020).............................................................. 19

*Updateme Inc. v. Axel Springer SE*,
  2018 WL 1184797 (N.D. Cal. Mar. 7, 2018) ............................................................... 4

*Wallace v. SharNinja Operating, LLC*,
  2020 WL 1139649 (N.D. Cal. Mar. 9, 2020) ............................................................... 3

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008)...................................................................................... 15

*Williams v. Tesla, Inc.*,
  2021 WL 2531177 (N.D. Cal. June 21, 2021).............................................................. 4

*Zeiger v. WellPet LLC*,
  526 F.Supp.3d 652 (N.D. Cal. 2021)........................................................................... 18

*Zuehlsdorf v. FCA US LLC*,
  2019 WL 2098352 (C.D. Cal. Apr. 30, 2019) ............................................................... 3

1

## I.       INTRODUCTION

2          This is a textbook fraudulent omission and affirmative misrepresentation case involving

3   Apple's omission and affirmative misrepresentation of material facts with respect to its M1

4   MacBook.   On November 10, 2020, Apple debuted the M1 MacBook Air and MacBook Pro

5   (collectively, the "M1 MacBook" or "MacBooks") at a price of $999 and $1,299, respectively.  CAC,

6   ¶ 1.  Apple has since sold millions of these MacBooks.  MTD at 8.  However, the MacBooks suffer

7   from a defect that goes to their core functionality.  Namely, the MacBooks' screens, unable to endure

8   normal wear and tear, "crack[], black[] out, or show[] magenta, purple and blue lines and squares, or

9   otherwise cease to function altogether."  CAC, ¶¶ 1-2, 28. In response to customer complaints, Apple

10  has inadvertently admitted the Defect, stating that the "top case" and a fragile, overextended glass

11  display are "engineered to tight tolerances."  CAC, ¶2.  And consumers who have attempted to secure

12  replacements or repairs have been rebuffed by Apple, often forced to pay Apple out of pocket

13  between $450 and $650 for repairs.  *Id.*

14         Worse, Apple has long known of the Defect and has continued to sell the MacBooks despite

15  its knowledge stemming from at least ten independent sources, including (1) its own quality control

16  and internal testing; (2) repairs data; (3) complaints made directly to Apple in person, over the phone,

17  and via online submissions; (4) complaints posted online and on its own forums; (5) its deletion of

18  several of these complaints; (6) online reputation management; (7) articles written on the topic by

19  reputable publications; (8) the uniform approach taken by Apple's technicians with respect to the

20  Defect; (9) Apple technicians who have articulated to consumers that the issue is widespread and

21  that numerous users have reported the issue to them and their colleagues; and (10) Apple's August

22  27, 2021 public statements on the Defect.  *See* CAC, ¶¶ 2, 42.

23         Apple's briefing does little to undermine Plaintiffs' arguments and allegations as it suffers

24  from numerous deficiencies, including, for example, its contention that Plaintiffs must identify the

25  precise cause of the Defect, a notion that has been repeatedly rejected by courts in this District.  *See*

26  Argument Section (A)(1)(a).  Apple also fails to address each of the sources of knowledge that

27  Plaintiffs pinpoint and, accordingly, have foreclosed its ability to do so.  *See* Argument Section

28  (A)(1)(b).  And Apple's briefing employs the wrong test with respect to its duty to disclose this

knowledge. *See* Argument Section (A)(1)(c). Further, Apple fails to address—and so has forfeited the opportunity to do so—Plaintiffs' claims for Negligent Misrepresentation. For these, and other reasons identified below, Plaintiffs' claims grounded in both fraud and negligence should survive.

## II.   ARGUMENT

### A.   Plaintiffs Have Stated Actionable Fraud-Based Claims

Plaintiffs' fraud-based claims based on Apple's fraudulent omission and concealment of material facts are sound and Apple's Motion to Dismiss should be denied.

#### 1.   Plaintiffs' <u>Concealment/Omission-Based Claims</u> are Adequately Plead (Counts 1-2, 4-15, 17-19)

Apple begins its analysis with a red herring by arguing that "Plaintiffs have failed to identify any misrepresentations or omissions that they purportedly reviewed and relied on, much less with the particularity required by Rule 9(b)." MTD at 5. This is wrong.

As a preliminary matter, Plaintiffs are not required to plead that level of specificity in an omission case. *See Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1145 (N.D. Cal. 2021) (citations omitted) ("Where the claim of fraud or mistake is one of fraud by omission, . . . the pleading standard is lowered on account of the reduced ability in an omission suit 'to specify the time, place, and specific content, relative to a claim involving affirmative misrepresentations."); *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1018 (N.D. Cal. 2020) ("While, typically, averments of fraud must be accompanied by the who, what, when, where and how of the misconduct charged, pure omissions claims can succeed without the same level of specificity required by a normal fraud claim. This is because, in a pure omissions case, a plaintiff will not be able to specify the time, place, and specific content of an omission as would a plaintiff in an affirmative false representation claim."); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 948–949 (N.D. Cal. 2018) ("Plaintiffs do not need to identify specific advertisements on which they relied in order to support an Article III injury-in-fact . . . . Allegations of overpayment based on a defendant's failure to disclose a product's limitations are clearly sufficient to satisfy Article III's injury-in-fact requirement.").

1
2
3
4
5
6

Nonetheless, as demonstrated below in Argument Section A(1)(c), Plaintiffs do identify specific representations that they relied on when purchasing the MacBooks.  That should allow Plaintiffs' claims to survive.  More relevantly here, Defendant argues these claims should be dismissed because they (i) do not allege a defect; (ii) do not allege Apple's knowledge of the unspecified alleged defect at the time of sale, and (iii) do not allege facts establishing Apple's duty to disclose.  *See* MTD at 1, 5-9.  These are considered and rejected, respectively.

7
8

### a.     The Defect

9
10
11

Apple contends that Plaintiffs' omission-based claims should be dismissed because Plaintiffs "fail to allege how or why M1 MacBooks are defective" and do not identify "what the alleged defect actually is[.]"  MTD at 5-6.  However, Apple's position regarding the alleged Defect is wrong for multiple reasons.

12
13
14
15
16
17
18
19
20

First, Apple is mistaken that Plaintiffs must precisely identify the "how or why" of the Defect. *See Wallace v. SharNinja Operating, LLC*, 2020 WL 1139649, at *1 (N.D. Cal. Mar. 9, 2020) ("a plaintiff is not required to identify the precise cause of a defect."); *Hamm v. Mercedes-Benz USA, LLC,* 2021 WL 1238304, at *14 (N.D. Cal. Apr. 2, 2021) (same); *see also Hardt v. Chrysler Grp., LLC,* 2015 WL 12683965, at *5 (C.D. Cal. June 15, 2015) ("Plaintiffs' factual allegations describe symptoms of a Defect attributed generally to the Manual Transmission . . . [A]t this stage of the litigation, 'plaintiffs are not required to plead the mechanical details of an alleged defect in order to state a claim.'"); *Zuehlsdorf v. FCA US LLC*, 2019 WL 2098352, at *6 (C.D. Cal. Apr. 30, 2019) (plaintiff need "not indicate how the alleged defect caused the reported symptoms.").

21
22
23
24
25
26
27
28

Second, courts do not require plaintiffs to identify the precise cause of the defect because "it is typically difficult for a plaintiff to discern the mechanical workings of a product at the pleading stage."  *Wallace*, 2020 WL 1139649, at *1; *Hamm*, 2021 WL 1238304, at *14 (same).  Instead, "[i]n the context of product defect claims, district courts in the Ninth Circuit have often held that a complaint provides fair notice of the defect if it (1) identifies the particular part or system affected by the defect, and (2) describes the problems allegedly caused by the defect."  *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1115 (C.D. Cal. 2021).  And in doing so, "the Court must view

1    the allegations in the light most favorable to Plaintiff." *Williams v. Tesla, Inc.*, 2021 WL 2531177,

2    at *3 (N.D. Cal. June 21, 2021) (Gilliam, J.).

3         Third, Plaintiffs do identify the Defect.  That is, unlike the plaintiffs in *Sciacca v. Apple*

4    *Inc.*—Apple's case-in-chief on this question—Plaintiffs identify the particular part affected by the

5    Defect and posit that engineering flaws such as the display being engineered to tight tolerances and

6    the overextended glass display contributed to the emergence of the Defect.  *See* MTD at 6 (quoting

7    362 F. Supp. 3d 787, 797 (N.D. Cal. 2019)).  Specifically, Plaintiffs (a) allege that "the screens are

8    extraordinarily fragile," (b) describe Apple's words that "the display glass goes right to the edge of

9    the enclosure," and (c) note that the issues "emerge on the screen within hours of powering up the

10   M1 MacBook for the first time."  *See* CAC, ¶¶ 1, 28, 40.  Going a step further, Plaintiffs (d) identify

11   Apple's "[i]nadvertent[] admi[ssion]" of the Defect, noting that "Apple informed consumers that

12   '[t]o enable the thin design of the Mac notebook computers, ***the clearance between the display***

13   ***(screen) and the top case is engineered to tight tolerances***.'"  *Id*. at ¶ 2 (emphasis added).  Plaintiffs

14   also note that those "who have secured repairs or replacements from Apple have quickly experienced

15   the problem reappearing on the repaired or replaced laptop."  *Id.* at ¶ 1.

16        Fourth, only after this analysis do Plaintiffs then identify the symptoms of the Defect—which

17   is the entirety of the plaintiffs' analysis in *Sciacca*—namely that the screens exhibit "cracking,

18   blacking out, or showing magenta, purple and blue lines and squares, or otherwise ceasing to function

19   altogether."  *Id.*  And contrary to Apple's argument that "Plaintiffs have not foreclosed the possibility

20   that the alleged issues with the displays on their devices were not caused by other factors, such as

21   abuse," Plaintiffs explicitly state that "the issues develop on their own without user interference."

22   *See* MTD at 6; CAC, ¶ 2.  Furthermore, Plaintiffs cite to a sampling of numerous consumer comments

23   in support of this proposition. *See id*. at ¶¶ 51-101.

24        Fifth, although Apple attempts to identify alternative causes for the Defect, such as user error,

25   this does not lessen the plausibility of Plaintiffs' claims under Ninth Circuit and Northern District of

26   California jurisprudence.  *See Updateme Inc. v. Axel Springer SE*, 2018 WL 1184797, at *6 (N.D.

27   Cal. Mar. 7, 2018) (Illston, J.) (quoting *Starr v. Baca*, 652 F. 3d 1202, 1216 (9th Cir. 2011)) ("If

28   there are two alternative explanations, one advanced by defendant and the other advanced by

1  plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule

2  12(b)(6)."); *Schley v. One Planet Ops Inc.*, 445 F. Supp. 3d 454, 461 (N.D. Cal. 2020) (Chen, J.)

3  (same); *accord In re Juul Labs, Inc., Antitrust Litig.*, 2021 WL 3675208, at *18 (N.D. Cal. Aug. 19,

4  2021) (Orrick, J.) ("Here, plaintiff's theory is more than plausible even if defendant's alternative

5  theories ultimately may be more convincing to the jury."). Accordingly, that argument should be

6  rejected.

### b.  Apple Had Knowledge Of The Defect

8  Apple contends that "Plaintiffs' omission claims also fail because they do not plausibly

9  allege Apple's knowledge of the unspecified defect at the time of sale." MTD at 6. However, as an

10  initial matter, Apple's analysis of its pre-sale knowledge begins with the fatal assumption that if it

11  can isolate and knock out each of the sources of knowledge that Plaintiffs posit, then it can refute

12  Plaintiffs' overall allegation that Apple had knowledge of the Defect. *See* MTD at 6-9. The court

13  in *In re MacBook Keyboard Litigation* rejected this notion, determining that "Apple misses the forest

14  for the trees." 2019 WL 1765817, at *6. That is, "[c]ourts have found that allegations that similarly

15  address multiple specific sources of knowledge have raised a plausible inference of the defendant's

16  knowledge." *Id.*[1]

17  Moreover, Apple fails to address each of the sources of knowledge that Plaintiffs posit to

18  demonstrate that Apple was aware of the Defect. That is, Apple only discusses its knowledge arising

19  from (1) pre-release testing; (2) online complaints; (3) articles written by well-regarded tech

20  publications; (4) online reputation management; (5) comments deleted on Apple's forums; (6) repairs

21  data; and (7) its August 27, 2021 statement on the Defect. *See* MTD at 6-9. <u>But Apple fails to</u>

22  <u>address—and is now barred from addressing in its reply—the other sources of knowledge that</u>

23  <u>Plaintiffs pinpoint.</u> *Cepelak v. HP Inc.*, 2021 WL 5298022, at *1 (N.D. Cal. Nov. 15, 2021)

---

[1] *Accord Burdt v. Whirlpool Corp.*, 2015 WL 4647929, at *1 (N.D. Cal. Aug. 5, 2015) ("the totality of detailed allegations of a defendant's access to sources such as pre-sale test data, consumer complaints, warranty data, dealer complaints, repairs data, and data regarding the purchase of replacement parts are sufficient to show a defendant's pre-sale knowledge of a defect and survive a motion to dismiss."); *Taleshpour v. Apple Inc.*, 2021 WL 1197494 (N.D. Cal. Mar. 30, 2021) ("The Court finds that the allegations of pre-release testing in combination with the allegations of substantial customer complaints are sufficient to show that Apple had exclusive knowledge of the Defect.").

1   (Chhabria, J.) ("HP's challenge to the plaintiff's fraud-by-omission claims is improperly raised: HP

2   failed to raise this argument in its initial motion to dismiss, though it could have.  It therefore may

3   not raise it now.").

4       These other sources of knowledge include (1) "complaints made directly to Apple in person,

5   over the phone, and via online submissions;" (2) "the uniformity in approach . . . suggest[ing] that

6   Apple's technicians have been put on notice concerning the Defect[;]" and (3) "Apple technicians

7   [who] have clearly articulated that the issue is widespread and that numerous users have reported the

8   issue to them and their colleagues." *See* CAC, ¶¶ 2, 42.  Nonetheless, turning to those sources of

9   knowledge Apple *does* address, it is evident that Apple does not overcome the plausible inference

10  Plaintiffs establish concerning its knowledge.

11      First, Apple argues that "merely alleging testing . . . without any details about or dates of the

12  testing or exactly what the testing would have shown is insufficient."  MTD at 7.  However, Apple

13  is mistaken as to the level of specificity Plaintiffs are required to identify concerning the pre-release

14  testing.  *Kowalsky v. Hewlett-Packard Co.*, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011)

15  (Koh, J.) ("Plaintiff is not required to plead the 'who, what, when, where, and how' as the alleged

16  testing . . . because these allegations go to HP's knowledge of the defect, and therefore need only be

17  alleged 'generally.'").[2]

18      Second, Apple is also mistaken that Plaintiffs do not identify details about Apple's testing.

19  Specifically, Plaintiffs state that "Apple made and controlled the entire development of the M1

20  MacBook[s] from start to finish[,]" and that "Defendant's marketing of the M1 MacBooks also

21  promised superior durability, proclaiming that both models are '[d]esigned to last,' explaining that

22  '[t]o maximize durability, we assessed the [M1 MacBooks] in our Reliability Testing Lab, using

23  rigorous testing methods that simulate customers' experience' and 'our products go through rigorous

24  testing before they leave our doors.'"  CAC, ¶¶ 26-29.  Plaintiffs also allege that "Apple has

25

26  _____

    [2] *Accord Guan v. Mercedes-Benz USA, LLC*, 2021 WL 5042994, at *4 (N.D. Cal. May 24, 2021) (Tigar)
    (citation omitted) ("While circumstances constituting fraud must be alleged with particularity, knowledge

27  may be alleged generally."); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1093 (N.D. Cal. 2014)
    (Tigar, J.) (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)) ("the [heightened

28  pleading standard] may be relaxed as to matters within the opposing party's knowledge.").

numerous labs and testing facilities designed for these sort of pre-release tests, including, for example, Apple's Secret Wireless Testing Lab and its Input Design Lab." CAC, ¶ 104. Plaintiffs also pinpoint examples of tests that may have been employed, as demonstrated from past product releases, "including a 'three-point bending test,' a 'pressure-point cycling test,' a 'torsion test,' a 'sit test,' and real-life user studies." *Id.* This is far more specific than the allegations asserted in the cases Defendant cites to support its position. *See* MTD at 7. And this sort of information has been repeatedly used in conjunction with other sources of knowledge to raise a plausible inference of Defendants knowledge.[3]

Third, Apple argues with regards to consumer complaints that "[b]y themselves they are insufficient to show that Apple had knowledge [of the defect]." MTD at 7 (citations omitted). As a preliminary matter, Plaintiffs do not cite to consumer complaints by themselves. Instead, as demonstrated above and in the Complaint, Plaintiffs identify online consumer complaints in addition to the nine other sources of Defendant's knowledge, including the fact that Apple deleted user comments. These complaints are all dated in chronological order and run from within days of Apple's first sales through a 10-month period until Plaintiffs' Complaint was filed. CAC, ¶¶ 43-101. Plaintiffs explicitly state that these complaints are amongst "the hundreds" posted "on Apple's forums" and are a "sampling of the thousands of comments publicly available online" regarding the Defect, going as far as to include photographs posted alongside the consumer complaints. *See id*. This is sufficient, consistent with this Court's past holdings.[4]

Yet, Defendant argues that "[t]he few cited complaints that predate some of Plaintiffs' purchases are insufficient to allege Apple's knowledge of the defect, especially considering that M1 MacBooks were purchased by millions of consumers." MTD at 8. However, as this Court has

---

[3] *See Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 998 (N.D. Cal. 2013) (determining that "pre-release testing data" used in conjunction with other sources of knowledge "have provided the Court with sufficient detail to make a determination about Defendants' knowledge[.]"); *Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*, 2015 WL 5138080, at *4 (N.D. Cal. Sept. 1, 2015) (Henderson, J.) (same); *Bryde v. Gen. Motors, LLC*, 2016 WL 6804584, at *11 (N.D. Cal. Nov. 17, 2016) (Orrick, J.) (same); *Davidson v. Apple, Inc.* 2017 WL 3149305, at *15 (N.D. Cal. July 25, 2017) (Koh, J.) (same).

[4] *See, e.g., Patterson v. RW Direct, Inc.*, 382 F. Supp. 3d 938, 941 (N.D. Cal. 2019) (Chhabria, J.) ("[a]s long as the consumer reviews are of a volume and type where it is reasonable to infer that they would have put the defendant on notice, Patterson can rely on them to state a claim" and that "[w]hile the reviews are not exclusively left on defendants' own website, any competent company monitors the sites of major retailers[.]").

previously held, "when a significant percentage of product reviews identify a problem, then the company that sells that product can reasonably be deemed on notice of the issue, even if only a subset of consumers choose to leave a review." *Patterson*, 382 F. Supp. 3d at 941; *Partida v. Tristar Prod., Inc.*, 2021 WL 4352374, at *8 (C.D. Cal. Aug. 5, 2021) (same). Moreover, "customer complaints may support knowledge when they are submitted to a forum that the defendant is likely to view." *Myers v. BMW of N. Am., LLC*, 2016 WL 5897740, at *4 (N.D. Cal. Oct. 11, 2016). Provided that "user comments have been deleted by Apple on Apple's forums," Apple would certainly have reviewed these consumer complaints. *See* CAC, ¶ 42.

And on this latter point, the decision in *Taleshpour* is instructive. *See* 2021 WL 1197494, at *11. There, Apple raised the exact same argument as it raises here. *Id.* ("Apple points out that each of the consumer complaints excerpted in the SAC were posted after all of the named Plaintiffs purchased their laptops."). The court rejected that argument for two reasons. For one, the court held that "Plaintiffs allege that the comments excerpted in the SAC are a 'small sampling' of the tens of thousands of comments and reports related to the [defect]." *Id.* Here, Plaintiffs have alleged similarly. *See* CAC, ¶ 40 ("the sampling of the thousands of comments publicly available online . . ."); ¶ 42 ("[t]he internet is replete with complaints from consumers who have expressed dissatisfaction about the Defect on Apple's own website[.]"). For two, while Apple argued in *Taleshpour* that the "delet[ion] [of] similar customer complaints from discussion forums on the Apple website . . . is insufficient," the court held that "this argument misses the point. If Apple deleted comments on its website from consumers complaining about display issues attributable to the Alleged Defect, that suggests that Apple had knowledge of the Alleged Defect, superior to that of potential class members." *Id.* The same is true in this case.

Fourth, Apple carries over its pre-and-post-dated argument and attempts to apply it to Plaintiffs' argument that Apple would have had knowledge of the Defect through articles, online reputation management, and its August 27, 2021 admission of the Defect. *See* MTD at 7-8. But the logic in *Taleshpour* as described in the preceding paragraph applies with equal force. *See* 2021 WL 1197494, at *11. Moreover, other courts considering analogous arguments have similarly rejected them. In *MacDonald v. Ford Motor Co.*, for example, the court rejected a nearly verbatim argument,

1  holding "[t]hat Ford is able to identify competing inferences from the same set of facts does not mean

2  that Plaintiffs' claims should be dismissed . . . One plausible inference that can be drawn from the

3  three TSBs is that Ford was generally aware of problems with the coolant pump, and that despite this

4  awareness it continued to sell vehicles containing the defective part.  For instance, the second TSB

5  indicates that Ford was aware of the defects in July 2008.  That plausibly suggests that it was aware

6  of some of those same defects when Plaintiff Barbee purchased his vehicle five months earlier."  37

7  F. Supp. 3d 1087, 1093 (N.D. Cal. 2014) (Tigar, J.).[5]  Accordingly, that argument should also be

8  rejected here.

9      Fifth, although Apple argues that Plaintiffs' pinpointing of repair requests is "pure

10  speculation and entitled to no weight," Apple misunderstands the standard applied to knowledge,

11  which, as already covered, "need only be alleged 'generally.'"  *Kowalsky*, 2011 WL 3501715, at *4.

12  This is especially the case where, as here, that information is "not . . . reasonably discoverable by the

13  plaintiffs."  *Anderson,* 500 F. Supp. 3d 993, at 1014.  Assuming Plaintiffs' allegations are true and

14  drawing all inference in Plaintiffs' favor, the Court should find that Plaintiffs' allegations raise a

15  plausible inference that Apple had knowledge of the Defect.

16              **c.      Apple Had A Duty To Disclose The Defect**

17      Apple argues that "Plaintiffs' fraudulent omission and constructive fraud claims fail because

18  they do not allege facts establishing that Apple owed Plaintiffs a duty to disclose."  MTD at 9.

19  However, Defendant's analysis employs the wrong test.  As articulated by the Ninth Circuit in

20  *Hodson v. Mars, Inc.*, and subsequently explained in *In re MacBook Keyboard Litigation*:

21          a plaintiff must allege three factors to raise a duty to disclose.  ***First***,
22          the plaintiff must allege that the omitted fact was material.  ***Second***,
           the plaintiff must allege that the omitted or concealed defect was
23          central to the product's function.  And ***third***, the plaintiff must allege
           one of the following: ' . . . (2) [that] the defendant has exclusive

24

25  ---

[5] *Accord Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, 2015 WL 4941780, at *6 (N.D. Cal. Aug. 19, 2015)

26  (Gilliam, J.) (citations omitted) ("While the complaint alleged that these events took place in 2006 and 2007,
   the Court still found that '[t]hese facts, if true, permit plausible inferences that [the defendant] was aware of

27  the defect . . . in 2005 and 2006,' which was sufficient to 'create a reasonable likelihood that discovery will
   produce evidence that [the defendant] was aware of the alleged defect at the time it sold the vehicles to
   Plaintiffs.'"); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1099 (N.D. Cal. 2021)

28  (same).

1

2

3

> knowledge of material facts not known or reasonably accessible to the plaintiff; (3) [that] the defendant actively concealed a material fact from the plaintiff; [or] (4) [that] the defendant makes partial representations that are misleading because some other material fact has not been disclosed.'

4

5

6

7

2019 WL 1765817, at *6 (quoting 891 F.3d 857, 863 (9th Cir. 2018)) (emphasis added); *accord Taleshpour*, 2021 WL 3037703, at *5.  Finally, "a plaintiff must show that 'had the omitted information been disclosed, one would have been aware of it and behaved differently.'" *Id.* (quoting *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)).  Plaintiffs have met this test.

8

9

10

11

First, considering <u>materiality</u>, "a court should assess whether 'a reasonable consumer would deem [an omitted fact] important in determining how to act in the transaction at issue.'" *Id.* (citations omitted).  This is "a question of fact that should be left to the jury unless the statement at issue is obviously unimportant." *Id.*  (citations omitted).  As in *In re Keyboard Litigation*, whether a core component fails would "be important when choosing to purchase a laptop computer," especially considering here that the issues "emerge on the screen within hours of powering up the M1 MacBook for the first time" and that Defendant fails to cover "the repairs . . . under warranty or otherwise, requiring the user to handle the repair themselves."  *See* 2019 WL 1765817, at *6; CAC, ¶¶ 40, 42.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Second, considering <u>centrality</u>, Plaintiffs devote an entire section in their Complaint called, "An Overview Of A Laptop's Key Features," to demonstrate the centrality of the display to the laptop.  *See* CAC, ¶¶ 21-25.  Plaintiffs quote experts who suggest that "[t]he display is arguably the second-most important piece of hardware in a good laptop.  After all, it's the means by which you actually use the device" and that "[t]here's simply no other part of a [laptop] that you're going to use more." *Id.* at 14.  Plaintiffs further state that "[a]ccordingly, consumers seeking to purchase a laptop over a desktop are, at a minimum, interested in purchasing (1) an integrated unit, combining the display, keyboard, and processor that is (2) portable, allowing the user to easily move around and travel with their unit" and that "consumers reasonably expect their laptops to exist independently of external monitors for their use and to withstand the normal use involved in transporting and loading and unloading their laptops and opening and closing their laptop display." *Id.*  Plaintiffs then repeatedly allege that "[t]he MacBook is defective, resulting in a display that is inoperable and cannot

28

perform its core function of displaying information" and that "the M1 MacBooks are inherently defective in a manner that goes to the core of the computer."  CAC at 48, 75.  As the court held in *Taleshpour*, "the display is indisputably central to the functionality of a laptop, and a defect that obscures all or part[] [of] the display renders the laptop unusable."  2021 WL 1197494, at *10. Plaintiffs' allegations regarding centrality are more than sufficient under existing case law.  *See In re MacBook*, 2019 WL 1765817, at *6 ("this Court finds that the functionality of a keyboard to be central to a laptop.").

Third, considering <u>exclusive knowledge</u>, Plaintiffs alleged that "Apple was under a duty to disclose the Defect because of its exclusive knowledge of the defect before selling the MacBook stemming from its quality control and pre-release testing, repairs made after release [and] complaints made directly to Apple."  CAC at 45. These allegations are nearly identical to the allegations in *Taleshpour*, 2021 WL 1197494, at *11.  Rejecting Apple's nearly verbatim arguments there, the court determined that Apple's argument "misses the point" and that "the allegations of pre-release testing in combination with the allegations of substantial customer complaints are sufficient to show that Apple had exclusive knowledge of the Alleged Defect."  *Id.*  Plaintiffs' allegations here in regard to exclusive knowledge are thus also sufficient under existing case law.

And contrary to Apple's argument that "Plaintiffs rely on publicly available information in their attempt to establish Apple's alleged knowledge," courts "do not apply 'exclusivity' with such rigidity.  Rather, exclusivity is analyzed in part by examining whether the defendant had 'superior' knowledge of the defect."  MTD at 10; *In re MacBook*, 2019 WL 1765817, at *7 (citations omitted). "Courts have found that the existence of online complaints do not show that [the] knowledge of the allegedly omitted defect was not exclusive of the defendant."  *In re MacBook*, 2019 WL 1765817, at *7 (citations omitted).  Therefore, that argument should also be rejected.

Finally, concerning <u>reliance</u>, Plaintiffs "must show that 'had the omitted information been disclosed, one would have been aware of it and behaved differently.'"  *Id.* (citations omitted).  Under this test, "a plaintiff must first show they would have been aware of a disclosure."  *Id.* (internal quotation marks and citation omitted).  "[I]f the omission is material, then it can be inferred that the plaintiff would have behaved differently."  *Id.*  (citations omitted).  As demonstrated above, whether

a laptop's display operates as intended is material in deciding to make such a purchase.  Further, as Plaintiffs allege in their Complaint, they reviewed and "relied upon" Apple's "advertisements, representations, packaging, and the information publicly available in the marketplace *as identified below* . . . when deciding to purchase [their] laptop[s]."  *See e.g.*, CAC, ¶ 4 (emphasis added).  Plaintiffs then identify specific material they relied upon, including statements by Senior VP of Apple's Worldwide Marketing, statements made during Apple's November 10, 2021 live streaming release of the M1 MacBook, statements and photographs made directly on Apple's website (including right on the M1 MacBook's Product Page), and statements made in Apple's press releases.  *See* CAC, ¶¶ 26-39.  These allegations are sufficient to support Plaintiffs' allegations of reliance under the case law in this District generally, and involving Apple as a defendant specifically, including in *In re MacBook*,[6] *Taleshpour*,[7] and *Anderson*.[8]

In the face of Plaintiffs' well-plead allegations of reliance, Apple's citation to *Lusson* is unpersuasive.  *See* MTD at 5 (quoting *Lusson v. Apple Inc.*, 2016 WL 10932723, at *2 (N.D. Cal. June 20, 2016) (Chhabria, J.)).  *Lusson* is clearly inapposite as the Court determined that "[i]n fact, the complaint doesn't seem to allege that the plaintiffs relied on those statements at all[.]" *Lusson*, 2016 WL 10932723, at *2.  And a review of the operative complaint in *Lusson* reveals that nowhere did plaintiffs allege or even mention "reliance," "rely," "relied," or any other similar term, let alone flesh out the marketing materials that plaintiffs relied on as Plaintiffs do here over the course of seven pages of Plaintiffs' Complaint, in addition to a nearly page-long paragraph for each Plaintiff that

---

[6] 2019 WL 1765817, at *7 ("Each Plaintiff alleges that they saw representations that the keyboards on the new laptop models were 'more responsive.'  Plaintiffs also allege that they were unaware of the alleged defect at the time of purchase, that they would not have purchased the laptops, or would not have paid the price that they did, had they known . . . about the alleged defect.  Plaintiffs therefore adequately allege that they had an opportunity to receive information about the alleged defect, had Apple disclosed it.").

[7] 2021 WL 1197494, at *11 ("Plaintiffs in this case allege that they visited the Apple website prior to purchasing or becoming owners of their laptops . . . .  Plaintiffs further allege that had they known about the Alleged Defect, they would not have purchased their laptops or would not have paid the price they paid.  The Court finds these allegations sufficient to demonstrate reliance.").

[8] 500 F. Supp. 3d 993, 1006 (N.D. Cal. 2020) (Orrick, J.) ("I conclude that it is sufficient for standing purposes at this early stage for the plaintiffs to allege—as they have—that (1) Apple failed to adequately disclose information about the iPhone XR; (2) the plaintiffs reviewed marketing and similar materials about the iPhone XR prior to making their purchase, which leads to a reasonable inference that they would have encountered the disclosure had it been made; and (3) that plaintiffs would not have made the purchase if they knew of the information.").

describes the basis of their reliance.  *See, e.g.,* CAC, ¶¶ 4-15, 26-41.  The same is true for Defendant's citation to *Davidson v. Apple Inc*.  *See* MTD at 5 (quoting 2017 WL 976048, at *4).  In fact, the court held in that case that "Plaintiffs' [Complaint] is devoid of any allegations that Plaintiffs were exposed to any representation, statement, advertisement, or even packaging prior to purchasing an iPhone 6 or 6 Plus."  *Davidson*, 2017 WL 976048, at *8.  The same cannot be said about Plaintiffs' Complaint.

For each of these reasons, Plaintiffs have adequately alleged facts establishing a duty to disclose and, therefore, have sufficiently alleged their omission / concealment-based claims.

### 2.    Plaintiffs' Affirmative Misrepresentation-Based Claims are Adequately Plead (Counts 2, 4-7, 9-15, 18, 20)

Plaintiffs' fraud-based claims based on Apple's affirmative misrepresentations are sound and Apple's Motion to Dismiss should be denied.

Apple begins its analysis of Plaintiffs' affirmative misrepresentation-based claims with the same argument raised and rejected in the immediately preceding paragraphs that "Plaintiffs do not allege what statement each of them reviewed or relied upon or 'explain how [the] statements [were] actually misleading or connected to the alleged defect.'"  MTD at 11 (quoting *Lusson,* 2016 WL 10932723, at *2).  But this is inaccurate.  As addressed, Apple's citation to *Lusson* does not support its position.  *See* Argument Section A(1)(c).  Plaintiffs' allegations with regards to reliance are far more detailed and specific than those raised in *Lusson.  Compare* CAC, ¶¶ 4-15, 26-41, *with Lusson*, 2016 WL 10932723, at *2, *and Lusson Complaint generally*.

Next, Apple argues that "***most*** of the alleged representations that Plaintiffs identify relate to features of the M1 MacBook that have no connection to the purported defect and thus cannot support a fraud claim."  MTD at 11 (emphasis added).  Preliminarily, in making this argument, Apple admits its argument only applies to "most" of the representations Plaintiffs identify.  That is, Apple only addresses "features like the power of the Graphics Processing Unit and the battery life."  *See id.*

In attacking such low-hanging fruit, Apple fails to address—and so has forfeited the opportunity to do so[9]—the other misrepresentations that Plaintiffs' pinpoint, such as "the M1

---

[9] *Dytch v. Yoon*, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

MacBook's advertised capabilities, including playing 'immersive, graphics-intensive games,' 'integrat[ing] 3D effect into video,' 'play[ing] back and edit[ing] multiple stream of full-quality, 4K Pro Res video,' and 'watch[ing] more movies and TV shows," which capabilities Plaintiffs unequivocally allege "may be hampered by the cracking, blacking out, and magenta, purple and blue lines and squares that emerge, rendering the M1 MacBook's display inoperable."  CAC, ¶ 41. Plaintiffs also pinpoint Apple's "marketing of the M1 MacBooks [which] also promised superior durability, proclaiming that both models are 'Designed to last,' explaining that 'To maximize durability, we assessed the [M1 MacBooks] in our Reliability Testing Lab, using rigorous testing methods that simulate customers' experiences.'" CAC, ¶ 29.  This belies the notion that the Defect has "no connection" with the misrepresentations.

In fact, such claims are nearly identical to those permitted to advance in *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000 (C.D. Cal. 2010) (Gee, J.), which is one of the few comparable cases involving a display that experiences "flickering images, green tint or bars over the entire screen, vertical multicolor lines, green lines, blanking, severe banding, screen flutter, side button issues, blackouts, red flickering lines, and complete screen failures" which "cause the monitors to become useless." *Lima*, 710 F. Supp. 2d at 1002.  There, "Gateway represented and advertised the XHD3000 as 'the world's first Quad-HD display, delivering more than four times the resolution of standard 720p high definition along with advanced display technology'; offering a 'visually intense' gaming experience designed 'to avoid skipped graphics or screen stutter' and 'providing maximum investment protection and long-functionality'" and "that users could watch HD video and movies and high-speed graphics on XHD3000, free of visual artifacts." *Id.*  There, like here, the plaintiffs "assert that [the defendant] made affirmative representations about its monitors that were either untrue or misleading." *Id.* at 1005.

And, there, like here, the defendant in *Lima* argued that its statements constituted puffery. *Id.* at 1007; *see also* MTD at 11-12 ("***most*** of the representations that arguably relate to displays of the M1 MacBook are too subjective to be actionable.") (emphasis added).  But the court also rejected this argument, determining that "[s]everal of the representations allegedly made by Gateway, considered in isolation, might amount to mere puffery . . . . however, [they] cannot be considered in

isolation because they contribute[d] to the deceptive context of the advertising as a whole." *Id.* (citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). The *Lima* court further determined that, "[t]o the extent Gateway argues that these unquantifiable statements are not alleged to be false, it misses the point. The relevant question is whether the statements, taken as a whole, are likely to deceive members of the public. The answer is in the affirmative given that, for purposes of [a] motion to dismiss, Plaintiff's allegations must be accepted as true." *Id.* at 1008.[10] For that reason, Apple's argument should be similarly rejected.

Finally, Apple argues that "statements about a product's functionality (such as support for P3 wide color)—as opposed to statements regarding a product's reliability—do not become actionable on an affirmative misrepresentation theory if a product ultimately fails." MTD at 12. Apple relies on *Berenblat v. Apple, Inc.*, 2009 WL 2591366, at *5 (N.D. Cal. Aug. 21, 2009) for this proposition. However, that case is clearly distinguishable as it involved a peripheral issue that had no bearing on the PowerBook G4's core functionality, namely "'the computer did not recognize one of the memory cards[.]'" *Berenblat*, 2009 WL 2591366, at *1. And a review of *Sciacca* reveals that it does not support Apple's position as the court determined "[i]n fact, none of the alleged misrepresentations have anything to do with the Watch screen itself." 362 F. Supp. 3d 787 at 799. As discussed throughout, Apple's misrepresentations have everything to do with the M1 MacBook's display. For these reasons, Plaintiffs' affirmative misrepresentation-based claims should survive Apple's Motion.

**B.     Plaintiffs Have Stated Actionable State Deceptive Trade Act Claims**

With just three lines, Apple argues that "[e]ach of Plaintiffs' Deceptive Trade Act claims (Counts 1-2, 4-12) relies on a course of fraudulent conduct" and "[b]ecause Plaintiffs have not alleged any actionable affirmative misrepresentation or omission . . . each Deceptive Trade Act claim must also fail." MTD at 12-13. However, as the preceding sections demonstrate, Plaintiffs have

---

[10] *Accord, In re NJOY, Inc. Consumer Class Action Litig.*, 2015 WL 12732461, at *10 (C.D. Cal. May 27, 2015) ("Many of [defendant's] arguments isolate individual statements in its advertisements and assail plaintiffs' reliance on each segment. This is not the proper approach . . . Viewing plaintiffs' allegations and the advertisement as a whole in the light most favorable ot plaintiffs, a reasonable consumer could find [that the advertising is misleading]."); *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1080 (N.D. Cal. 2014) (Koh, J.) ("even puffery may 'contribute . . . to the deceptive context . . . as a whole.") (citations omitted).

more than adequately alleged claims based on Apple's omissions and affirmative fraudulent misrepresentations.  For this reason, Plaintiffs State Deceptive Trade Act claims premised on omissions and affirmative fraudulent misrepresentations should also survive.  This includes Causes of Action 1-2 and Causes of Action 4-12.

### C.     Plaintiffs Have Stated Claims For Unjust Enrichment

Apple contends that Plaintiffs' "unjust enrichment claim (Count 20) fails because Plaintiffs acknowledge that an express contract (the Limited Warranty) governs the subject matter of the alleged wrongdoing and they have not alleged that it is unenforceable." MTD at 19.[11]  But this is incorrect with respect to how this claim is interpreted in Plaintiffs' respective states.

With regards to California, this Court has previously held that "[t]he plaintiffs have stated a claim for unjust enrichment, which is an independent cause of action in California."  *Nava v. Kobe Steel, Ltd*., 2019 WL 5173767, at *1 (N.D. Cal. Oct. 8, 2019) (Chhabria, J.) (citing *Bruton v. Gerber Products Co.*, 703 App'x. 468, 470 (9th Cir. 2017)).  Indeed, other courts in the Northern District of California have ruled the same.  *See In re Bang Energy Drink Mktg. Litig.*, 2020 WL 4458916, at *10 (N.D. Cal. Feb. 6, 2020) (same); *Blessing v. Plex Sys., Inc.*, 2021 WL 6064006, at *6 (N.D. Cal. Dec. 22, 2021) (Hamilton, J.) (same); *Brooks v. Thomson Reuter Corp.*, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (Chen, J.).  Plaintiffs may also pursue their unjust enrichment claims under Florida law,[12] New Jersey law,[13] and Virginia law.[14]

---

[11] Plaintiffs drop their Sixteenth Cause of Acton for Money Had and Received as duplicative of their Twentieth Cause of Action for Quasi-Contract / Unjust Enrichment.

[12] *In re Takata Airbarg Prod. Liab. Litig.*, 462 F. Supp. 3d 1304, 1326 (S.D. Fla. 2020) ("Plaintiffs are allowed to assert equitable unjust enrichment claims in the alternative to their legal claims.").

[13] *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 384 (D.N.J. 2021), *reconsideration denied sub nom. Dougherty v. Univ.*, 2021 WL 2310094 (D.N.J. June 7, 2021) ("Unjust enrichment claims can be pleaded in the alternative in case no contract is found to exist.").

[14] *Gurwell v. Sea World Parks & Ent. LLC*, 2021 WL 4168503, at *13 (E.D. Va. Aug. 11, 2021) (determining that unjust enrichment claims may survive "if pled in the alternative" and "satisfy the Rule 9(b) heightened pleading standard for fraud . . . [when] claims are based in fraud.").

1

2

**D.      This Court Has Jurisdiction To Grant Plaintiffs' Equitable Relief**

**1.      Plaintiffs' Adequately Allege Equitable Restitution**

Apple argues that "Plaintiffs' demands for equitable restitution should be dismissed because Plaintiffs have not and cannot allege that they lack an adequate remedy at law."  MTD at 19-20. Apple premises this argument on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). However, Apple exaggerates *Sonner*'s impact.

In *Cepelak*, this Court recently considered *Sonner* and rejected the same argument Defendant makes here.  2021 WL 5298022, at *2-3 (N.D. Cal. Nov. 15, 2021).  The Court held that "*Sonner* primarily speaks to the ability of a federal court to **award** equitable relief at the end of the case" and that "the ultimate holding of *Sonner* is that a plaintiff must **establish** that she lacks an adequate remedy at law before **securing** equitable relief under the UCL and CLRA."  *Id.* at *2 (emphasis in the original and internal quotation marks omitted).  The Court concluded that "*Sonner*, therefore, should not be understood as a categorical bar to pleading claims for equitable relief under the UCL and damages under the CLRA in a single complaint, as plaintiffs can bring claims in the alternative under different legal theories."  *Id.*  Nonetheless, the Court dismissed the claims for equitable monetary relief because the plaintiffs had not "alleged the inadequacy of a remedy at law with respect to their claims for equitable monetary relief."  *Id.* at *3.  The Court, however, dismissed those claims with leave to amend "because the plaintiffs may be able to articulate an alternative legal theory under which equitable monetary relief – but not damages – is available."  *Id.*

Here, as in *Cepelak*, the Court should reject Defendant's argument that *Sonner* categorically bars Plaintiffs from seeking equitable relief.  Indeed, other courts have likewise held that plaintiffs have the right to plead equitable claims in the alternative to their claims for monetary damages.  *See Junhan Jeong v. Nexo Financial LL, et al.,* 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) ("The Court finds that in light of *Sonner*'s limited applicability to the pleading stage, there is no binding precedent that holds that pleading equitable restitution in the alternative is improper.").[15]  The Court

---

[15] *Accord  Krause-Pettai v. Unilever United States, Inc.,* 2021 WL 1597931, at *4 (S.D. Cal. Apr. 23, 2021) ("the Court declines to dismiss Plaintiffs' request for equitable relief on these claims.); *Sagastume v. Psychemedics Corp.,* 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) ("*Sonner*

1   should, therefore, reject Apple's overbroad reading of *Sonner* and permit Plaintiffs to proceed with

2   their equitable claims.

### 2.   Plaintiffs Adequately Allege Injunctive Relief

4          Apple next argues in just one sentence that "[t]he rest of Plaintiffs' claims are also subject to

5   dismissal 'to the extent they seek an injunction, restitution, or other equitable relief.'"  MTD at 20

6   (quoting *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020)).

7   Setting aside the question of whether Apple sufficiently raised that argument in the first instance,

8   this summarily formulated and conclusory argument should, nonetheless, be rejected.  Plaintiffs have

9   standing to seek injunctive relief.

10          First, *Sonner* does not apply to injunctive relief.  *See* 971 F.3d at 842 ("Injunctive relief is

11   not at issue . . .").  This is especially true considering "monetary damages for past harm are an

12   inadequate remedy for the future harm [at which] an injunction under California consumer protection

13   law is aimed." *Zeiger v. WellPet LLC*, 526 F.Supp.3d 652, 687 (N.D. Cal. 2021); *accord Haas v.*

14   *Travelex Ins. Servs. Inc.*, 2021 WL 3682309, at *3 (C.D. Cal. Aug. 19, 2021) ("injunctive relief is

15   not an available remedy at law; moreover, its presence in the Complaint distinguishes this case from

16   *Sonner*.").

17          Second, "[i]n the Ninth Circuit, 'a previously deceived consumer may have standing to seek

18   an injunction against false advertising or labeling, even though the consumer knows or suspects that

19   the advertising was false at the time of the original purchase, because the consumer may suffer an

20   'actual and imminent, not conjectural or hypothetical' threat of future harm." *Elgindy v. AGA Serv.*

21   *Co.*, 2021 WL 1176535, at *6 (N.D. Cal. Mar. 29, 2021) (quoting *Davidson v. Kimberly-Clark Corp.*,

22   889 F.3d 956, 969 (9th Cir. 2018)).  "The harm may be demonstrated in two ways: (1) based on 'the

23   consumer's plausible allegations that she will be unable to rely on the product's advertising or

24   labeling in the future, and so will not purchase the product although she would like to,' or (2) based

25   on 'the consumer's plausible allegations that she might purchase the product in the future, despite

26   _____

27   does not hold that plaintiffs may not seek alternative remedies at the pleading stage."); *Freeman v. Indochino Apparel, Inc.*, 443 F.Supp.3d 1107, 1114 (N.D. Cal. Mar. 11, 2020) ("Plaintiff may allege claims in the alternative at the pleading stage.  The equitable remedies afforded by the UCL and CLRA are expressly stated to be in addition to other available remedies at law.").

28

the fact that it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.'" *Id.* (quoting *id.* at 969-70).

Here, Plaintiffs allege that that they "remain[] *very much* interested in purchasing Apple's laptops in the future and would consider doing so, if [they] felt confident that Apple would correct the problems discussed here and throughout the Complaint." *See* CAC, ¶¶ 4-15. This is sufficient under *Davidson* and subsequent rulings in the Northern District. *See Shuman v. SquareTrade Inc.*, 2021 WL 5113182, at *8 (N.D. Cal. Nov. 3, 2021) (determining that a plaintiff's allegations "were sufficient to establish standing to seek injunctive relief" where he alleged he "would purchase additional SquareTrade protection plans in the future in the event that Square Trade's reimbursement practices were to be reformed to eliminate the unlawful practices discussed in this complaint.").[16]

Third, Plaintiffs' allegations that they "remain[] *very much* interested in purchasing Apple's laptops" is distinguishable from those allegations this Court considered in *Cepelak*, 2021 WL 5298022, at *3. A review of the underlying complaint in that case reveals that the plaintiffs alleged that they "wish[] to and [are] likely to continue purchasing and using Defendant's Printers, *but only if* Defendant [does one thing]; and [does another]." *See, e.g., Cepelak* Complaint, ¶ 15 (emphasis added). The plaintiffs then alleged that "Therefore, Plaintiff will abstain from purchasing the Printers[.]" *Id.* Considering those allegations, this Court determined that "[t]his harm cannot be remedied by a future damages action because the plaintiffs cannot bring a lawsuit based on their decision *not* to purchase a printer." *Cepelak*, 2021 WL 5298022, at *3. That is, the plaintiffs there intended to abstain from purchasing a printer, so they could not be aided by an injunction. By contrast, Plaintiffs here are not suggesting that they are abstaining from purchasing MacBooks and, therefore, require an injunction to get them back in the store; Plaintiffs are alleging that they plan to

---

[16] Accord *Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at *6 (N.D. Cal. Apr. 21, 2020) ("Here, plaintiff has sufficiently alleged that he was deceived by the front of the Honey Bunches of Oats packaging and that he may purchase the cereal again in the future if the label is accurate. Absent injunctive relief, plaintiff would not know whether honey is in fact a significant sweetener in defendant's product based on the front of the cereal box."); *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 528 (N.D. Cal. 2018) ("In light of *Davidson*, the Court finds that Plaintiffs' allegations . . . are sufficient on their face to allege standing to seek injunctive relief. The Complaint alleges that [the plaintiff] 'maintains an interest in continuing as a customer at Chipotle in the future if Chipotle does eventually have a non-GMO and GMO-free menu,' and that [the other plaintiffs] all 'maintain[] an interest] in purchasing food at Chipotle in the future.'").

purchase Apple's laptops and hope an injunction will allow them to rely on Apple's marketing when doing so.

Accordingly, Plaintiffs' claims for injunctive relief under California law should survive Apple's motion.  The same is true of Plaintiffs' non-California claims, which Defendant does not address and has, therefore, abandoned.  *Cepelak*, 2021 WL 5298022, at *1 ("HP failed to raise this argument in its initial motion to dismiss, though it could have.  It therefore may not raise it now.").  However, to the extent required, Plaintiffs respectfully seek leave to amend to articulate the basis of their claims more fully for equitable restitution and injunctive relief, if necessary.  *See Cepelak*, 2021 WL 5298022, at *3 ("because the plaintiffs may be able to articulate an alternative legal theory under which equitably monetary relief . . . is available, the plaintiffs' claims for restitution, disgorgement, and other forms of equitable monetary relief are dismissed with leave to amend.").

## III.   CONCLUSION

Plaintiffs respectfully request that this Court deny Defendant's Motion with respect to Plaintiffs' claims for (1) Fraudulent Omission / Concealment; (2) Affirmative Misrepresentation; (3) State Deceptive Trade Practices; (4) Unjust Enrichment; (5) Equitable Relief; and (6) Negligent Misrepresentation.[17]   Alternatively, Plaintiffs respectfully request leave to amend to address any deficiencies this Court may identify.

Dated:  January 28, 2022

**BURSOR & FISHER, P.A**.

By:   /s/ *Sean L. Litteral*
            Sean L. Litteral

L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596

**MIGLIACCIO & RATHOD LLP**
Nicholas A. Migliaccio (*pro hac vice*)
Jason S. Rathod (*pro hac vide*)
412 H Street, NE
Washington, D.C. 20002

*Attorneys for Plaintiffs*

---

[17] Plaintiffs concede their breach of warranty claims.