DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
MORGAN D. MACBRIDE (Bar No. 301248)
morgan.macbride@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NESTOR ALMEIDA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>APPLE INC.,<br><br>    Defendant. | Lead Case No. 3:21-cv-07109-VC<br><br>Consolidated with No. 3:21-cv-07112-VC<br><br>**APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:   March 17, 2022<br>Time:  10:00 a.m.<br>Dept.:  Courtroom 4 – 17th Floor<br>Judge:  Honorable Vince Chhabria |
| DAPHNE PAREAS and DANIEL FRIEND, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br>v.<br><br>APPLE INC.,<br><br>    Defendant. | |

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. PLAINTIFFS DO NOT ALLEGE ANY ACTIONABLE
FRAUD-BASED CLAIMS ...................................................................................................1

    A. Plaintiffs Fail to Adequately Allege Reliance
(Counts 1-2, 4-15, 17-19)..........................................................................................1

    B. Plaintiffs' Omission Claims Fail (Counts 1-2, 4-15, 17-18).....................................2

        1. Plaintiffs Fail to Identify the Alleged Defect................................................2

        2. Plaintiffs Do Not Plausibly Allege Apple's Knowledge ..............................5

        3. Plaintiffs Fail to Allege Facts Establishing A Duty to
Disclose..........................................................................................................8

    C. Plaintiffs Allege No Actionable Misrepresentation
(Counts 1-2, 4-15, 17-19)..........................................................................................9

        1. The Representations Plaintiffs Identify Are Not Actionable .......................9

        2. Plaintiffs' Negligent Misrepresentation Argument
is Without Merit..........................................................................................11

    D. The Deceptive Trade Act Claims Fail (Counts 1-2, 4-12)......................................11

III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS
INADEQUATELY PLED ...................................................................................................11

IV. PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF ..................................12

V. CONCLUSION....................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahern v. Apple*,
 411 F. Supp. 3d 541 (N.D. Cal. 2019) ..................................................................................9

*Berenblat v. Apple Inc.*,
 2009 WL 2591366 (N.D. Cal. Aug. 21, 2009) ....................................................................10

*Bly-Magee v. California*,
 236 F.3d 1014 (9th Cir. 2001) .............................................................................................3

*Burdt v. Whirlpool Corp.*,
 2015 WL 4647929 (N.D. Cal. Aug. 5, 2015) ...................................................................5, 6

*Cepelak v. HP Inc.*,
 2021 WL 5298022 (N.D. Cal. Nov. 15, 2021) ..............................................................12, 13

*Citizens for Free Speech, LLC v. Cty. of Alameda*,
 338 F. Supp. 3d 995 (N.D. Cal. 2018),
 *aff'd,* 953 F.3d 655 (9th Cir. 2020) ......................................................................................8

*Clark v. Am. Honda Motor Co.*,
 528 F. Supp. 3d 1108 (C.D. Cal. 2021) ...............................................................................4

*Dang v. Samsung Elecs. Co.*,
 2018 WL 11348883 (N.D. Cal. July 2, 2018) ......................................................................3

*Frenzel v. Aliphcom*,
 2015 WL 4110811 (N.D. Cal. July 7, 2015) ......................................................................10

*Grodzitsky v. Am. Honda Motor Co.*,
 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ........................................................................7

*Guan v. Mercedes-Benz USA, LLC*,
 2021 WL 5042994 (N.D. Cal. May 24, 2021) .....................................................................7

*Hauck v. Advanced Micro Devices, Inc.*,
 2018 WL 5729234 (N.D. Cal. Oct. 29, 2018) ......................................................................3

*J & J Sports Prods., Inc. v. Mendoza-Lopez*,
 2018 WL 1811987 (N.D. Cal. Apr. 17, 2018) ......................................................................1

*Jackson v. Kaiser Permanente*,
 2019 WL 10893916 (C.D. Cal. Jan. 8, 2019) .......................................................................8

*Lusson v. Apple Inc.*,
  2016 WL 10932723 (N.D. Cal. June 20, 2016) (Chhabria, J.) .................................................1

*In re MacBook Keyboard Litig.*,
  2019 WL 1765817 (N.D. Cal. April 22, 2019) ...................................................................5, 8

*In re MacBook Keyboard Litig.*,
  2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ........................................................................12

*Pelayo v. Hundai Motor Am., Inc.*,
  2021 WL 1808628 (C.D. Cal. May 5, 2021) ...........................................................................4

*Punian v. Gillette Co.*,
  2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) .........................................................................3

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
  2020 WL 7664461 (N.D. Cal. Dec. 24, 2020) .........................................................................3

*Sciacca v. Apple Inc.*,
  362 F.Supp.3d 787 (N.D. Cal. 2019) ................................................................................3, 10

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) .................................................................................................12

*Strome v. DBMK Enters, Inc.*,
  2014 WL 6485533 (N.D. Cal. Nov. 19, 2014) ......................................................................11

*Vien-Phuong Thi Ho v. Recontrust Co.*,
  669 F. App'x 857 (9th Cir. 2016) ..........................................................................................11

*Yagman v. Gen. Motors Co.*,
  2014 WL 4177295 (C.D. Cal. Aug. 22, 2014) .....................................................................2, 3

*Zuehlsdorf v. FCA US LLC*,
  2019 WL 2098352 (C.D. Cal. Apr. 30, 2019) .........................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs' Opposition fails to explain away the basic pleading deficiencies in each of their claims. Recognizing their warranty, contract, and money had and received claims were futile, Plaintiffs abandoned them.[1] Thus, all that remains are Plaintiffs' fraud-based and unjust enrichment claims, which are riddled with deficiencies, including: (1) the lack of detail regarding what representations Plaintiffs purportedly relied upon in purchasing their M1 MacBooks, how they were exposed to such representations, and why the representations were allegedly false; (2) what the alleged defect is or how it allegedly affects two separate product lines that are not alleged to have the same design or components; (3) the lack of allegations establishing Apple's knowledge of the unidentified defect at the time of sale to Plaintiffs; and (4) the lack of any allegations demonstrating an inadequate remedy at law to sustain Plaintiffs' claims for equitable relief. For these and additional reasons explained below, each of Plaintiffs' claims should be dismissed.

### II. PLAINTIFFS DO NOT ALLEGE ANY ACTIONABLE FRAUD-BASED CLAIMS

#### A. Plaintiffs Fail to Adequately Allege Reliance (Counts 1-2, 4-15, 17-19)

Reliance is an element of each of Plaintiffs' fraud-based claims (*i.e.*, all remaining claims other than unjust enrichment), but Plaintiffs' allegations regarding this element are insufficient to satisfy Rule 8, let alone the applicable (and more stringent) Rule 9(b) pleading standard. *See* Mot. at 4-5 (citing cases); *see also Lusson v. Apple Inc.*, 2016 WL 10932723, *2 (N.D. Cal. June 20, 2016) (Chhabria, J.) (applying Rule 9(b) and granting motion to dismiss where the complaint failed to give detail "about how or when the plaintiffs actually relied" on the purported misrepresentations and did not allege reliance at all "except in the most conclusory terms"). Here, Plaintiffs do not allege reliance "except in the most conclusory terms." *Id.* at *2. Each named plaintiff repeats the same boilerplate allegation that they purportedly relied upon "advertisements, representations, packaging, and the information publicly available in the marketplace." Compl.

---

[1] *See, e.g.*, Opp'n at 16 n.11, 20 n.17 (abandoning Counts 3, 16 and 21-24). Because they were abandoned, these claims should be dismissed with prejudice. *J & J Sports Prods., Inc. v. Mendoza-Lopez*, 2018 WL 1811987, at *4 (N.D. Cal. Apr. 17, 2018).

¶¶ 4-15. In their Opposition, Plaintiffs attempt to remedy these deficient allegations by pointing to general references (disconnected from any particular Plaintiff) regarding: (1) quotes included in a post on a podcaster's blog; (2) an Apple press release; the separate product webpages for both the (3) M1 MacBook Pro and (4) M1 MacBook Air; the separate Product Environmental Report for the (5) M1 MacBook Pro and (6) M1 MacBook Air; and (7) the 49-minute product launch video. Mot. at 12. Plaintiffs argue that these allegations are "sufficient." Opp'n at 12. They are not.

Neither the Complaint nor Plaintiffs' Opposition provides detail regarding how any of the named Plaintiffs were exposed to these statements, and the suggestion that each of the twelve Plaintiffs "actually relied" on the exact same representations across the same seven sources— including those scattered throughout a lengthy video or in an obscure blogpost that says nothing about M1 MacBooks' displays—strains credulity. *Id.*, Compl. ¶¶ 26 & nn.10-11, 35-39 & n.23. Indeed, some of the purported representations pertain to only one type of M1 MacBook. For example, the M1 MacBook Pro's product page (as the name suggests) only discusses the M1 MacBook *Pro*, but Plaintiffs Pareas, Seveland, Sherman, Henderson, and Angeles each allegedly relied on these representations before purchasing a MacBook *Air*. Compl. ¶¶ 5-7, 10-11, 28. The same is true for the remaining Plaintiffs, who purchased M1 MacBook Pros, but implausibly purport to have relied on representations concerning the M1 MacBook Air. *Id.* ¶¶ 4, 8-9, 12-15. For these reasons, Plaintiffs' allegations regarding reliance are insufficient and, even standing alone, this is fatal to all of Plaintiffs' fraud-based claims.

> **B.   Plaintiffs' Omission Claims Fail (Counts 1-2, 4-15, 17-18)**
>
> **1.   Plaintiffs Fail to Identify the Alleged Defect**

Plaintiffs fail to allege how the M1 MacBooks' displays are allegedly defective. Contrary to Plaintiffs' suggestions otherwise, Apple never argued that Plaintiffs must "precisely" identify the "mechanical details" of the alleged defect. Opp'n at 3. Instead, Apple (correctly) argued that Plaintiffs must identify "what might cause" the myriad symptoms they are allegedly experiencing across different product lines (Mot. at 6), which is necessary to provide Apple with fair notice of Plaintiffs' claims under both the Rule 8 and Rule 9(b) pleading standards. *Yagman v. Gen. Motors*

*Co.*, 2014 WL 4177295, at *3 (C.D. Cal. Aug. 22, 2014) (cleaned up) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alleging only symptoms "renders it merely possible that a [] defect was the cause; the Complaint 'pleads facts that are merely consistent with [D]efendants' liability,' and thus 'stops short of the line between possibility and plausibility of entitlement to relief.'"); *Dang v. Samsung Elecs. Co.*, 2018 WL 11348883, at *9 (N.D. Cal. July 2, 2018) ("The AC is not 'specific enough to give [defendant] notice of the particular misconduct which is alleged to constitute the fraud charged.' Thus, Plaintiff has failed to satisfy Rule 9(b)."). Unable to identify any purported defect, Plaintiffs should not be allowed to proceed past the motion to dismiss stage and seek expensive and intrusive discovery in search of a defect to support their claims. *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

Indeed, the weight of authority in the Northern District requires a plaintiff to identify the purported defect at least generally. *Sciacca v. Apple Inc.*, 362 F.Supp.3d 787, 797-98 (N.D. Cal. 2019); *Punian v. Gillette Co.*, 2016 WL 1029607, at *13 (N.D. Cal. Mar. 15, 2016) (granting motion to dismiss in part because "[i]n fact, Plaintiff does not allege any cause for [the product]'s potential to [fail]"); *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 2020 WL 7664461, at *5-6 (N.D. Cal. Dec. 24, 2020) (plaintiffs "must provide factual allegations describing each Subject [product] . . . and the component or setup that causes alleged injuries in order to survive a motion to dismiss."); *Hauck v. Advanced Micro Devices, Inc.*, 2018 WL 5729234, at *5 (N.D. Cal. Oct. 29, 2018) (plaintiffs "fail to explain **how** AMD's design created those vulnerabilities" underlying their claims); *Yagman*, 2014 WL 4177295, at *2-3. This rule is especially important here because Plaintiffs allegedly experienced a wide range of display issues—including "cracking, blacking out, or showing magenta, purple and blue lines and squares, or otherwise ceasing to function altogether"—across two separate product lines. Compl. ¶ 1. As in *Sciacca*, which also involved allegations of glass screens cracking as a result of an alleged unspecified defect, it is common sense that glass screens can crack due to accident or abuse, thus the allegation that the screens cracked is insufficient to infer the existence of a defect. Moreover, Plaintiffs' failure to identify the alleged defect exacerbates their other pleading deficiencies. For example, the Court cannot assess Apple's knowledge of a defect where Plaintiffs have not even

identified what the defect is.

The cases Plaintiffs cite in support of their position are readily distinguishable. For example, Plaintiffs cite *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108 (C.D. Cal. 2021) for what they assert is a more lenient test. Opp'n at 3. However, in *Clark*, plaintiffs actually alleged the cause of the product failures—they "[were] **the result** of a miscommunication among the computers and software which control the engine, throttle, and transmission." *Id.* at 1116. Here, Plaintiffs do not explain the cause of the issues they complain of. Similarly, in *Zuehlsdorf v. FCA US LLC*, 2019 WL 2098352, at *6 (C.D. Cal. Apr. 30, 2019), plaintiffs at least identified a particular part that only certain vehicles contained—the "Jatco JF011E Continuously Variable Transmission"—when defining the defect. Further, whereas Plaintiffs here allege a range of issues with the display screens in two separate product lines, the plaintiffs in *Zuehlsdorf* alleged only two symptoms, both of which allegedly manifested "when the driver tries to accelerate[.]" *Id.* at *1. The court denied the motion to dismiss there because plaintiffs' "identification of the particular CVT affected . . . and description of the problems allegedly caused by the defect [were] sufficient to provide fair notice and allow Defendant to mount a defense." *Id.* at *6.[2] Not here.

Plaintiffs also argue that they "do identify the defect." Opp'n at 4. They are wrong. **First**, Plaintiffs point to an allegation that the screens are "extraordinarily fragile." *Id.* However, this allegation does not identify the purported defect. *See Pelayo v. Hundai Motor Am., Inc.*, 2021 WL 1808628, at *6 (C.D. Cal. May 5, 2021) ("Plaintiffs' allegations that the class vehicles are 'prone' to certain symptoms does not sufficiently plead a defect."). **Second**, Plaintiffs point to an allegation that "the display glass goes right to the edge of the enclosure." Opp'n at 4. This quote, however, is alleged to pertain only to the "small-bezel design of the M1 MacBook Air." Compl. ¶ 28. Plaintiffs do not explain how a statement regarding the design of one product can identify the alleged defect in a different product. Plaintiffs also do not allege any causal nexus between the issues they complained about and the display glass in the M1 MacBook Air going right to the

---

[2] *Hamm v. Mercedes-Benz USA, LLC* is also inapposite—in that case, plaintiff identified the "722.9 7G Tronic transmission" as the "particular" part that was allegedly defective. 2021 WL 1238304, at *13-14 (N.D. Cal. Apr. 2, 2021).

edge of the enclosure.³  ***Third***, Plaintiffs point to the allegation that the purported defect "emerge[s] on the screen within hours of powering up" the computers "for the first time."  Compl. ¶ 40.  This at most establishes *when* the purported defect allegedly manifests; it does not identify *what* the purported defect is.  ***Fourth***, Plaintiffs point to Apple's statement regarding the possibility that certain third-party accessories may damage the computers due to the "tight tolerances" between the display and top case when the computer is closed.  However, Plaintiffs allege that the defect "manifests independently of these considerations."  Compl. ¶ 2.  If the alleged defect manifests independently of the display's tight tolerances, as Plaintiffs claim, then the "tight tolerances" cannot contribute to, identify, or define the defect.  Further, Plaintiffs do not allege any causal nexus between the issues they complain of and the display's tight tolerances or accessory use.

### 2. Plaintiffs Do Not Plausibly Allege Apple's Knowledge

Plaintiffs' omission-based claims are also deficient because Plaintiffs have not sufficiently alleged Apple's knowledge of the unspecified alleged defect prior to Plaintiffs' purchases.  Plaintiffs argue that "multiple" individual means of knowledge, even if each is fatally flawed, may collectively establish Apple's knowledge.  Opp'n at 5.  This argument defies logic and is inconsistent with Plaintiffs' cited authority.

Plaintiffs rely upon *In re MacBook Keyboard Litig.* for support.  But in that case, the court did not find that allegations of knowledge that are deficient in isolation are sufficient in the aggregate.  Instead, it held that allegations that the purported defect was identified in a patent application pre-dating plaintiffs' purchases and in pre-release testing—conducted to identify the very defect and that the testing allegedly "revealed the defect to Apple"—were sufficient to raise a plausible inference at the pleading stage.  2019 WL 1765817, at *2, *6 (N.D. Cal. Apr. 22, 2019).

Plaintiffs' reliance on *Burdt* is equally unavailing.  In fact, Plaintiffs incorrectly identify as the court's own analysis language where the court was merely describing the plaintiff's argument.  *Compare* Opp'n at 5 n.1 *with Burdt v. Whirlpool Corp.*, 2015 WL 4647929, at *3 (N.D. Cal. Aug.

---

³ Whereas the "Technical Service Bulletins" in the automotive cases that Plaintiffs cite show the manufacturer's knowledge of the issue addressed in the bulletins, Plaintiffs do not explain why Apple would knowingly promote an alleged defect in an *advertisement* touting the award-winning design of the MacBook Air.  *See* Mot. at 8-9 & n.4 and citations therein.

5, 2015). The court applied Ninth Circuit law and **granted** the motion to dismiss after finding the plaintiffs' allegations as to customer complaints and pre-release testing were deficient. *Id.* at *4-5. Contrary to Plaintiff's Opposition, the court in *Burdt* found the defendants successfully "knock[ed] out each of the sources of knowledge that plaintiffs posit[ed]" and thus held that plaintiffs failed to establish knowledge at the time of sale. Opp'n at 5.

Lastly, in *Taleshpour v. Apple*, the court did not find Apple's argument that publicly available information defeats exclusive knowledge "misses the point." Opp'n at 8. Instead, the court found that plaintiffs' allegations of pre-release testing—allegations which were more detailed than those here—combined with the allegations of customer complaints sufficed to infer knowledge at the pleading stage. Plaintiffs in *Taleshpour* specifically alleged "who conducted the tests, what type of tests were done, and what type of results analysis was performed." 2021 WL 1197494, at *11 (N.D. Cal. Mar. 30, 2021). Plaintiffs' allegations here, as to both pre-release testing and customer complaints, do not compare.

Pre-release testing is a standard part of product development and an "undetailed assertion that the testing must have revealed the alleged defect"—with no explanation as to how the testing would have revealed the defect and what the testing would have shown—cannot suffice to establish a defendant's knowledge of a purported defect; "[o]therwise any consumer could bring [an omission claim] merely by asserting that a manufacturer had knowledge of an alleged defect from its prerelease testing." *Burdt,* 2015 WL 4647929, at *4. Plaintiffs purport to offer "details" about the pre-release testing in their Opposition, but their allegations do not suffice. Opp'n at 7. Whether or not Apple has a "Secret Wireless Testing Lab" or an "Input Design Lab" is immaterial to this case because neither wireless connectivity nor input design are at issue. *Id.* Further, the tests that Plaintiffs "pinpoint" ("a 'three-point bending test,' a 'pressure-point cycling test,' a 'torsion test,' a 'sit test,' and real-life user studies") are each alleged to be used "in testing [Apple's] iPhone," ***not*** the M1 MacBooks. *Id.*, Compl. ¶ 104. Additionally, Plaintiffs do not allege what the testing on the M1 MacBooks would have revealed or how the testing would have put Apple on notice of the unidentified purported defect. *Burdt*, 2015 WL 4647929, at*4 (allegations of pre-release testing were insufficient to impute knowledge where the complaint

failed to suggest "how any tests would have alerted [defendant] to the alleged defect"); *Guan v. Mercedes-Benz USA, LLC*, 2021 WL 5042994, at *5 (N.D. Cal. May 24, 2021) (finding alleged pre-release testing and post-dated consumer complaints insufficient to "support an inference that [defendant] was aware of the defect at the time it sold the [product] to [plaintiff]"); *see also Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 690822, at *7 (C.D. Cal. Feb. 19, 2013).

None of Plaintiffs' remaining allegations establish Apple's knowledge of the defect at the time of sale to Plaintiffs.[4]  First, Plaintiffs cite a series of complaints that largely post-date their purchases.  Mot. at 7-8.  Plaintiffs' reliance on this Court's decision in *Patterson v. RW Direct, Inc.* is misplaced because Plaintiffs here do not allege that "a significant percentage of product reviews" or complaints identified the alleged defect and they do not allege when those complaints were posted relative to Plaintiffs' purchases of their M1 MacBooks.  382 F. Supp. 3d 938, 940-41 (N.D. Cal. 2019).  Plaintiffs' allegations here are similar to those in *Wilson v. Hewlett-Packard*, where the dated complaints alleged were posted ***after*** the time of plaintiffs' purchases.  668 F.3d 1136, 1147-48 (9th Cir. 2012).  Plaintiffs' allegations are also readily distinguishable from those in *Williams v. Yamaha Motor Co.*, because Plaintiffs have not alleged an unusually high volume of complaints, what percentage of all comments purportedly relate to the alleged defect, nor the existence of a dedicated response system.  851 F.3d 1015, 1028 (9th Cir. 2017).

Second, Plaintiffs cannot explain how articles posted months after Plaintiffs' purchase dates could have supplied Apple with knowledge at the time of sale.  Opp'n at 8.  *MacDonald v. Ford Motor Co.* does not establish otherwise.  In that case, the court found the defendants had knowledge because they issued multiple "technical service bulletins" that "detail[ed] problems that [defendant] had with the [part]" at issue in the litigation.  37 F .Supp. 3d 1087, 1093 (N.D. Cal. 2014).  Since there were documents identifying the same issues with the same part, ***before***

---

[4] Contrary to Plaintiffs' suggestion otherwise, Apple addressed each basis for knowledge detailed in the Complaint.  *See* Mot. at 6-9; Compl. ¶¶ 2, 104-109.  Nowhere do Plaintiffs actually allege any "complaints made directly to Apple in person, over the phone, [or] via online submission," nor do they allege any relevant details.  The remaining two bases Plaintiffs cite in their Opposition regarding how Apple technicians allegedly addressed some complaints are inferences allegedly "reveal[ed]" by consumer complaints on various websites, which themselves are deficient because nearly every complaint post-dates each plaintiff's purchase.  Opp'n at 6, Compl. ¶ 42.

plaintiffs' purchase, the court found the bulletins "taken together" supported an inference of knowledge. *Id.* at 1094. Plaintiffs here have not alleged any documents that identify any defect, much less documents pre-dating their purchases.

Lastly, Plaintiffs offer no response to Apple's argument that their "repair data" allegations are deficient. Opp'n at 9. Plaintiffs do not (and cannot) point to the allegations that Apple has identified as missing from the Complaint, including whether the number of repairs allegedly conducted would be unusual or alarming in light of Apple's sales figures. Mot. at 9.

### 3. Plaintiffs Fail to Allege Facts Establishing A Duty to Disclose

Plaintiffs also fail to allege facts establishing that Apple owed a duty to disclose. As an initial matter, Plaintiffs incorrectly assert that Apple employed "the wrong test." Opp'n at 9. To the contrary, Apple focused its argument in that section on the third element in Plaintiffs' formulation of the test—establishing a duty to disclose—which Plaintiffs have not satisfied here for multiple reasons. Mot. at 9-11.[5]

As explained above, Plaintiffs fail to plausibly allege that Apple had knowledge of the alleged defect at the time of Plaintiffs' purchases, let alone superior knowledge not known or reasonably accessible to Plaintiffs as required to establish a duty to disclose. Further, while Plaintiffs point to publicly available information in an attempt to establish Apple's knowledge of the purported defect, they inconsistently allege that the same information does not defeat exclusive knowledge. Opp'n at 11, Compl. ¶¶ 43-102, 108-09.[6] Plaintiffs cite *In re MacBook Keyboard Litig.* for the proposition that the mere existence of online complaints does not defeat an allegation

---

[5] Plaintiffs fail to raise (and therefore forfeit) their argument that Apple was under a duty to disclose arising from a partial representation. *Citizens for Free Speech, LLC v. Cty. of Alameda*, 338 F. Supp. 3d 995, 1005 (N.D. Cal. 2018) ("By failing to respond to [defendant's] contention, Plaintiffs have effectively conceded its validity."), *aff'd,* 953 F.3d 655 (9th Cir. 2020); s*ee* Mot. at 10-11, Compl. ¶¶ 131, 133, 142, 281, 307; *see generally* Opp'n.

[6] For instance, Plaintiffs allege "numerous articles by tech's most esteemed publications" have been "written publicly and extensively on this Defect," implying that the relevant information would be easy to find. Compl. ¶ 42, 108. But then they allege that each Plaintiff "could [not] have known [of the defect] through reasonable diligence." Compl. ¶¶ 4-15. Such contradictory factual allegations are impermissible. *Jackson v. Kaiser Permanente*, 2019 WL 10893916, at *5 (C.D. Cal. Jan. 8, 2019) ("Plaintiff cannot plead contradictory facts that render Plaintiff's claims implausible." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

that a defendant has exclusive knowledge. But Plaintiffs here cite many sources of publicly available information, not just online complaints on Apple's support fora. Plaintiffs also allege the existence of online complaints on third party websites, "well-regarded tech publications that have written ***publicly and extensively*** on this Defect," and an Apple support article. Compl. ¶¶ 2, 43, 108-09 (emphasis added). Thus, if the publicly available information Plaintiffs cite was sufficient to establish Apple's knowledge of the alleged defect at the time of sale—it is not—that same information should preclude any claim of a duty to disclose based on exclusive knowledge. *See Ahern v. Apple*, 411 F. Supp. 3d 541, 575 (N.D. Cal. 2019) ("to sufficiently allege exclusive knowledge giving rise to a duty to disclose, plaintiffs must proffer specific allegations regarding the content of information, how defendants had access to this information, and ***how plaintiffs did not have access to or could not learn this information***.") (emphasis added). This too warrants dismissal of Plaintiffs' omission-based claims.

      **C.**      **Plaintiffs Allege No Actionable Misrepresentation (Counts 1-2, 4-15, 17-19)**

            **1.**      **The Representations Plaintiffs Identify Are Not Actionable**

In its Motion, Apple offered three separate layers of arguments collectively addressing every purported representation by Apple alleged in the Complaint.[7] Mot. at 11-12. Plaintiffs misleadingly dwell on Apple's first argument—that most of the statements by Apple alleged in the Complaint have no connection with the alleged defect—and confuse its other two arguments. Apple's "*[s]econd*" argument is that "subjective, immeasurable assertions that say nothing about specific" features are non-actionable—an argument recognized under the laws of each state at issue in this action. Mot. at 12 & n.8. Apple's "*[t]hird*" argument is that statements regarding a product's functionality—including "'play[ing] back and edit[ing] multiple streams of full-quality,

---

[7] Due to space constraints, Apple's Motion could not have listed each representation alleged in Plaintiffs' 81-page Complaint. Accordingly, Apple made clear that the representations expressly identified in the Motion were examples. Plaintiffs' argument that Apple "forfeited" the opportunity to respond to certain statements because Apple did not explicitly list them is wrong because, as the very case that Plaintiffs cite explains, Apple has neither "introduce[d] new facts [n]or different legal arguments" warranting such a finding. Opp'n at 13-14 & n.9 (citing *Dytch v. Yoon*, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011)). Moreover, the purported representations that Plaintiffs identify in their Opposition are all related to product features or functionality, which Apple addressed in its "*[t]hird*" argument. *Id.* at 13-14, Mot. at 12.

4K Pro Res video,' and 'watch[ing] more movies and TV shows,'"—as opposed to statements about reliability, do not become actionable if the product ultimately fails. Compl. ¶¶ 31, 41.

As to the third argument, courts in this district have consistently applied the aforementioned rule, emphasizing the public policy implications of a contrary approach. *See, e.g.*, *Berenblat v. Apple Inc.*, 2009 WL 2591366, at *6 (N.D. Cal. Aug. 21, 2009) (dismissing CLRA claims based on laptop's allegedly defective memory slot where "[t]he complaint does not allege that [defendant] made any specific representation with respect to the durability of the memory slot;" noting "[s]imilar claims under the CLRA have been rejected because ***otherwise [a] statement describing any feature would be actionable when either the feature—or product as a whole—eventually failed***") (emphasis added); *Frenzel v. Aliphcom*, 2015 WL 4110811, at *12 (N.D. Cal. July 7, 2015) (collecting cases); *Sciacca.*, 362 F.Supp.3d at 798 (rejecting the argument that representations about, among other things, the brightness of the Apple Watch display, were rendered false because an alleged defect may ultimately cause the watch display to detach, crack, or shatter). In one sentence, Plaintiffs attempt to distinguish *Berenblat* with the specious claim that the computer failing to recognize one of the memory cards is "peripheral." Opp'n at 15. But, the feature at issue there was not "peripheral" in any sense. "Memory cards" as used by the court referred to "random access memory ("RAM")," an internal component essential to a computer's functionality and performance. *Berenblat*, 2009 WL 2591366, at *1. And, in any event, Plaintiffs do not explain why the rule in *Berenblat* would apply only to "core" and not "peripheral" features—a distinction that appears nowhere in the case law.

In response to Apple's second argument that subjective and immeasurable statements are not actionable, Plaintiffs point to *Lima v. Gateway*. But in *Lima*, the court found two statements about a monitor's functionality were actually deceptive at the time of sale: (1) that the monitor achieved a certain high resolution, when in fact the monitor could not do so without purchasing an additional product; and (2) that the monitor was compatible with virtually any device, when in fact it was not because defendant did not make the drivers necessary to connect the monitor with certain devices. 710 F. Supp. 2d 1000, 1007-08 (C.D. Cal. 2010). In addition to these two statements, the plaintiff alleged other representations which the defendant argued were subjective and

immeasurable, and thus non-actionable.  The court rejected defendant's puffery argument and found that the other representations—which independently may not have been actionable—"contribute[d] to the deceptive context of the advertising as a whole." *Id.*  Here, Apple agrees with Plaintiffs that a number of their alleged representations are subjective and immeasurable statements, like those in *Lima*.  However, unlike *Lima*, Plaintiffs have not alleged *any* actually deceptive representations (*i.e.*, representations pertaining to the M1 MacBooks' features that were actually deceptive at the time of sale).  Accordingly, there is no "deceptive context" to contribute to, and thus the subjective and immensurable statements here are not actionable.

### 2. Plaintiffs' Negligent Misrepresentation Argument is Without Merit

Plaintiffs assert in their introduction (but nowhere else) that Apple "fails to address" and thus "forfeited the opportunity" to address Plaintiffs' negligent misrepresentation claim.  Opp'n at 2.  This is pure gamesmanship.  Apple expressly moved to dismiss **all** claims.  *See, e.g.,* Mot. at 2, 20.  Apple argued that Plaintiffs' negligent misrepresentation claim sounded in fraud but failed to meet the Rule 9(b) standard, and Plaintiffs failed to adequately allege any misrepresentation or reliance, which are essential elements of a negligent misrepresentation claim.  *Strome v. DBMK Enters, Inc.*, 2014 WL 6485533, at *6 (N.D. Cal. Nov. 19, 2014).  Plaintiffs' attempt to seize upon a clerical error listing negligent misrepresentation (Count 19) alongside the omission section of Apple's Motion instead of the affirmative misrepresentation section, should fail.

### D. The Deceptive Trade Act Claims Fail (Counts 1-2, 4-12)

Plaintiffs do not contest Apple's argument that their Deceptive Trade Act claims rise or fall with their fraudulent omission and affirmative misrepresentation allegations.  Mot. at 12-13, Opp'n at 15-16.  For the reasons explained above, each Deceptive Trade Act claim must also fail.

## III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS INADEQUATELY PLED

Plaintiffs argue their claim for unjust enrichment should survive because it is an "independent cause of action in California" and three other states.[8]  Opp'n. at 16.  Apple never

---

[8] Plaintiffs thus forfeit their right to pursue this claim under the law of the other states at issue: Massachusetts, New York, North Carolina, and Rhode Island. Compl. ¶ 328, *Vien-Phuong Thi Ho v. Recontrust Co.*, 669 F. App'x 857, 859 (9th Cir. 2016).

argued otherwise. Apple's argument was that unjust enrichment claims fail where "an express contract [] governs the subject matter of the alleged wrongdoing." Mot. at 19. While Plaintiffs suggest that this claim is pled in the alternative to contractual claims, the very case they cite in support thereof identifies the deficiency with their argument—the alternative cause of action becomes viable only if "no contract is found to exist." Opp'n at 16 n.13 (quoting *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 384 (D.N.J. 2021)). Here, as Apple noted in its Motion (and Plaintiffs nowhere contest), Plaintiffs have not alleged, even in the alternative, "that [the Limited Warranty] is unenforceable." Mot. at 19. This is fatal to their unjust enrichment claims.

### IV.  PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF

Plaintiffs mischaracterize Apple's arguments with respect to the Ninth Circuit's opinion in *Sonner*, this Court's opinion in *Cepelak*, and the application of those opinions here. Indeed, Apple followed this Court's command to consider "whether [Plaintiffs] have plausibly alleged the inadequacy of legal remedies for each claim for equitable relief that they seek." Mot. at 19 (quoting *Cepelak v. HP Inc.*, 2021 WL 5298022, at *2 (N.D. Cal. Nov. 15, 2021). Specifically, Apple argued that Plaintiffs are pursuing damages under their Deceptive Trade Acts, Common Law Fraud, and (now forfeited) Warranty Claims, yet nowhere do they allege that the damage remedies provided by these claims are inadequate. This is fatal to their claims for equitable restitution under the UCL, FAL, and unjust enrichment, which are "rooted in the same theory and factual allegations" as their claims for damages. Mot. at 4-5; *Cepelak*, 2021 WL 5298022, at *3.

Moreover, Plaintiffs argue that *Sonner* "does not apply to injunctive relief." Opp'n at 18. Not so. While injunctive relief was not at issue in *Sonner*, the Ninth Circuit's reasoning was based on "the traditional principles governing equitable remedies in federal courts, including the **requisite inadequacy of legal remedies**." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Thus, *Sonner*'s reasoning is equally applicable to injunctive relief, as "numerous courts" have held. *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (collecting cases). Indeed, in *Cepelak*, this Court analyzed the plaintiffs' claims for injunctive relief and found that, because the plaintiffs "will abstain from purchasing [the product],"

any resulting harm "cannot be remedied by a future damages action." 2021 WL 5298022, at *3.

Plaintiffs here, however, insist that their "allegations . . . is [sic] distinguishable from those allegations this Court considered in *Cepelak*" because "plaintiffs here are ***not*** suggesting that they are abstaining from purchasing MacBooks. . . . Plaintiffs are alleging that they plan to purchase Apple's laptops." Opp'n at 19-20 (emphasis added). This only underscores that *Sonner* bars Plaintiffs' claims for injunctive relief, as this Court concluded in *Cepelak* that had the plaintiffs "planned to buy [the product at issue] in the future," the harm could be remedied by a future damages action, thus "***making injunctive relief inappropriate***." *Cepelak*, 2021 WL 5298022, at *3 (emphasis added). Plaintiffs have thus established that their claims for injunctive relief are inappropriate, and must be dismissed alongside their claims for equitable restitution.

## V.   CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court dismiss Plaintiffs' Consolidated Class Action Complaint in its entirety pursuant to Rule 12(b)(1) and Rule 12(b)(6).

Dated: February 18, 2022

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: */s/ David R. Singh*
      DAVID R. SINGH

Attorney for Defendant APPLE INC.